UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FRANCIS J. FLYNN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:09CV2069 HEA |
| | ) | |
| MAZDA MOTORS OF AMERICA, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Remand, [Doc. No.
8], and Defendant Frank Bommarito Oldsmobile, Inc., d/b/a Bommarito Mazda
West County's Motion to Dismiss, [Doc. No. 14]. Defendant Mazda Motor of
America, Inc. opposes the Motion to Remand. No opposition to the Motion to
Dismiss has been filed. For the reasons set forth below, the Motion to Dismiss is
granted. The Motion to Remand is denied.

## Facts and Background

Plaintiffs filed this action in the Circuit Court for the City of St. Louis,
Missouri against Defendants alleging the following:

Francis Flynn, Sr. and Joanne Flynn purchased a new Mazda MPV 2006 from
Defendant Frank Bommarito Oldsmobile, Inc. d/b/a Bommarito Mazda West
County. The vehicle was equipped with front air bags for both the driver and

passenger side.

On November 12, 2009, Joanne Flynn was driving the vehicle in Bards town, Kentucky; Francis Flynn, Sr. was sitting in the passenger seat. The vehicle went off the road and the front of the vehicle hit either a small tree or a metal sign, causing the vehicle to overturn. The two front airbags did not deploy upon impact with the tree or sign or at any time during the accident. Allegedly, as a result of the failure of the airbags to deploy and/or the poor crash worthiness, Francis Flynn, Sr. and Joanne Flynn suffered bodily injuries and death.

The Complaint states a claim for strict liability-wrongful death, (Count 1), against Defendants claiming that the vehicle was in a defective condition and unreasonably dangerous in that the airbag systems were defectively designed in that they failed to deploy during a front impact accident; the airbag system was wholly inadequate for a vehicle of its type; the design of the vehicle is inadequate in strength to prevent if from crushing and encroaching on the passenger cell in the vehicle during an accident like the one in issue; the design of the vehicle is inadequate because it did not provide an adequate, proper and efficient crash energy management system.

Plaintiffs further claim that the dangerous and defective conditions in the vehicle existed at the time the vehicle was manufactured, sold and/or distributed by

Defendants in the ordinary course of their business.

Plaintiffs also state a claim based on negligence-wrongful death, (Count II), alleging that Defendants negligently and carelessly designed the vehicle.

Defendant Mazda Motor of America, Inc. removed this matter pursuant to the Court's diversity of citizenship jurisdiction. 28 U.S.C. § 1332. Defendant Mazda and Plaintiffs are of diverse citizenship. Although Defendant Bommarito is a citizen of Missouri (and Delaware), as are Plaintiffs, Mazda urged that Bommarito was fraudulently joined because there was no possibility that Plaintiffs can state a cause of action against it.

Plaintiffs filed a Motion to Remand arguing that there was not complete diversity of citizenship because Plaintiffs have at least colorable claims under Missouri law against Bommarito. Plaintiffs urge application of Missouri law to this matter, but also argue that even applying Kentucky law, there is arguably a reasonable basis for predicting that Kentucky law might impose liability on the non-diverse defendant Frank Bommarito under a theory of strict liability if this defendant "knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer." K.R.S. § 411.340.

**Choice of Laws**

A district court sitting in diversity must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir.2008). When determining choice-of-law issues, Missouri courts apply the "most significant relationship" established by the Restatement (Second) of Conflicts of Law. *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo.1969). For wrongful death actions, Second Restatement Section 175 creates the presumption that "the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship" to the parties and occurrences. Restatement (Second) of Conflict of Laws § 175 (1971).

To determine whether a state has a more significant interest than the state of injury, Missouri courts apply Second Restatement Section 145, which provides two sets of criteria for determining the state with the most significant relationship. *Natalini v. Little*, 185 S.W.3d 239, 248-50 (Mo.Ct.App.2006); *Goede v. Aerojet General Corp.*, 143 S.W.3d 14, 25 nn. 7 & 8, 26 (Mo.Ct.App.2004); see also *In re Air Crash Disaster Near Chicago, Ill., on May 25, 1979*, 644 F.2d 594, 611 (7th Cir.1981) (turning to Section 145 to determine if a state other than the state of injury has a more significant relationship in a wrongful death action). First, courts must

consider whether a state has a more significant interest under the principles stated in Second Restatement Section 6, which include:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability and uniformity of result; and

(g) the ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts of Law § 6. Second, courts must consider the following contacts when applying the Section 6 principles: (1) the place of the injury; (2) the place of misconduct; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered. Id. § 145(2).

Second Restatement Analysis

As previously mentioned, Section 175 calls for states to apply the substantive laws of the "state where the injury occurred," unless some other state has a more significant relationship to the parties and occurrence under the principles listed in Section 6. Restatement (Second) of Conflicts of Law § 175.  In this case, the

decedents died after an automobile accident in Kentucky. Accordingly, Kentucky is the state "where the injury occurred" under Section 175, and Kentucky law should apply unless, with respect to some particular issue, another state has a more significant relationship to the occurrence and parties under the criteria listed in Sections 6 and 145. See *id.* § 175; *Natalini*, 185 S.W.3d at 248; *Chicago*, 644 F.2d at 611.

Relevant Section 6 Interests and Section 145 Contacts

      In tort actions such as the present one, the only relevant Section 6 factors are those established in paragraphs (b), (c), and (e), which deal with the "policies and interests of the jurisdictions involved and the field of law to be applied." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1359 (8th Cir.1994) (applying Missouri conflicts-of-law rules). The needs of the interstate and international systems, paragraph (a), are not typically implicated by actions arising from torts. *Id.* Paragraphs (d) and (f), "which deal with protection of justified expectations and certainty, predictability, and uniformity of result, are implicated only minimally" in cases "arising from accidents" because "persons who unintentionally cause injury usually act without contemplating the law" to be applied. *Id.* (citing Restatement (Second) of Conflicts of Law § 145 cmt. b). Finally, consideration of the ease in determining and applying the law, paragraph (g), points in favor of applying the state of injury's law to all three issues because of the ease in applying only one

state's laws. *Natalini*, 185 S.W.3d at 254. But this "policy should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results." Id. at 254 (quoting Restatement (Second) of Conflicts of Law § 6(2) cmt. j).

In this case, the states with relevant contacts under Section 145 include: (1) Kentucky the state of injury; (2) Missouri, the place of the sale of the vehicle, (and Japan, the place of manufacture of the vehicle); (3) Missouri, Delaware and California, the parties' citizenship and places of incorporation and business; and (4) the place where the relationship between the parties is centered. Because this case arises out of an automobile crash, it is not clear where the relationship among the parties is centered. Defendant contends that the parties' relationship is centered in Kentucky because the crash occurred there. By contrast, Plaintiffs think the relationship is centered in Missouri because the decedents purchased the car in Missouri. It is undisputed that the vehicle was manufactured in Japan. Although the crash was in Kentucky, the design and manufacture of the vehicle, the alleged misconduct, did not occur in Kentucky. The plaintiffs lived in Missouri, but Defendant Mazda did not have business interactions with them in that state, even though Bommarito sold the vehicle in Missouri. Thus, although there are contacts with Missouri, the relationship among the parties is not centered in any state because the contacts with each of these states were so limited. Therefore, the place

where the parties' relationship was centered is not determinative.

Considering the above factors, there are none which significantly overcome the presumption that the law of the place of the injury is the appropriate law to apply. The relationships with the State of Missouri are not so significant as to defeat the presumption. See *Nelson v. Hall*, 684 S.W.2d 350, 351-353 (Mo.App. 1984); *Nelson v. Frenz*, Cause Number 95CV1676JCH (E.D. Mo. 1996).

**Application of Kentucky Law**

Section 411.340 of the Kentucky Revised Statutes provides:

**411.340 When wholesaler, distributor or retailer to be held liable**

In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

KRS § 411.340

Plaintiffs' claims against Bommarito are based solely on their allegation that Bommarito "knew or reasonably should have known" of the alleged defects in the vehicle. In its Motion to Dismiss, Bommarito urges that it did not design,

manufacture or test the vehicle. Bommarito has submitted an affidavit from Chuck Wallis, the General Manager of Defendant Bommarito. This affidavit avers that Bommarito sold the vehicle, but that it did not participate in the design, manufacture or testing of the vehicle and that it did not alter or modify the vehicle. This affidavit establishes that the so called "Middleman Statute," Section 411.340 of the Kentucky Revised Statutes, applies to Bommarito.

> Kentucky courts have not defined the kind of allegations necessary to overcome KRS 411.340 in these circumstances. However, Kentucky courts would undoubtedly require that to maintain a non-frivolous action against a retailer such as Jeffersontown Hardware, Plaintiff state something more than that the seller bore the same knowledge as the buyer. A contrary finding would render the statute's language superfluous; virtually any retailer under any circumstances could be subject to suit and liability by merely selling an item. At the very least, Plaintiffs must allege some more specific or special knowledge of dangerousness by the retailer to avoid the protections afforded by KRS 411.340. Plaintiffs have failed to do so in this case. Consequently, naming Jeffersontown Hardware as a party defendant is completely without merit.

*Weixler v. Paris Co., Inc.* 2003 WL 105503, 2 (W.D.Ky.,2003). Plaintiffs have failed to respond to Bommarito's Motion to Dismiss, and have therefore failed to controvert the affidavit in support thereof. Plaintiffs' claims against Bommarito will therefore be dismissed, pursuant to K.R.S. § 411.340.

## Conclusion

Complete diversity exists between Plaintiffs and Defendant Mazda.

Plaintiff's reliance on Missouri law to secure the citizenship of Bommarito in the Court's determination of diversity of citizenship jurisdiction is misplaced, as Kentucky law applies to the injury alleged in the complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand, [Doc. No. 8], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Frank Bommarito Oldsmobile, Inc., d/b/a Bommarito Mazda West County's Motion to Dismiss, [Doc. No. 14], is granted, as provided herein.

Dated this 14th day of July, 2010.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE